Did the accountant, did the accountant here work for Harris or not? I'm here. You're here?  All right, Mr. Usher, do you want any rebuttal time or not? No, Your Honor. Okay. I just want to let it move. I want to get this clock set up. All right, you can be whenever you're ready. Thank you, Your Honor. May it please the Court. From the outset of this case, the trial court demonstrated a persistent one-sided hostility towards the defense while affording the government extraordinary latitude. It is our position that this was not just a momentary lapse or an effort to keep the trial moving and that it was a pattern that could not have been missed throughout the trial. It was first at a pretrial hearing that the government argued that contractors would tell the defendant and other NYCHA employees, they would say, take care of me. And the court asked defense counsel whether or not he planned to argue that the money came from Santa Claus. That comment set the tone, and it was clear to the trial court that the defendant was guilty before the trial began. At trial, the government was permitted to have witnesses read exhibits aloud, explain charts line by line, and narrate documents to the jury. Well, that's fairly normal, right? Yes. What you just said is what prosecutors do all the time. Yes. Sort of putting in their case, it's called. I agree with that, Your Honor. But it is our position that when defense counsel attempted to use the same exhibits with the same witnesses in the same manner, the court stopped us and was told— I looked at your citations, and I think you're really misleading what happened. The judge didn't want people just reading from documents that are in evidence while they're on the stand. In fact, in the direct of the witness that you complained about, that he cut you off from doing that, he said to the prosecutor, do you think you could cut down on the responsive reading from plain, simple English documents? And then when he tried to do the same thing across, he said the same thing. And when you complained, he said, I'm doing—I did that to the prosecutor. I'm doing it to you. So how could the jury defer any type of judicial bias from a judge who doesn't want reading from documents that are in evidence? That's a pretty weak claim for bias. While the trial court did also instruct the government to cut down on reading, the—they were given a much higher degree of latitude, meaning they were allowed to ask a substantial amount of questions, have the witness read off the document for a long period of time, and then when— You didn't say any instances of that. You said they—for 10 pages, they questioned the witness about the document, which is what, as Judge Walker pointed out, witnesses do. They reference something in the document. They said, tell us about that. Tell us about that, which the judge was fine with, and was fine when you did that, too. He didn't want reading from documents that are in evidence, which many judges have the same policy. It wasn't that—I would argue that he didn't just allow us to do the same thing that the prosecution did. Any other points that you think are worth— Yes, tell us about the reasonable doubt you think you created. So the most obvious instance to me would have been at closing, when the prosecution— Tell us about the reasonable doubt that you created in terms of your cross-examination or the way you dealt with evidence. Why was there a reasonable doubt about this woman's judgment? Well, there's reasonable doubt in regards to the credibility of the contractor witnesses. One of the witnesses, for example, admitted to having bribing so many people that he could not count. We were not allowed to question whether or not he had any relation to the other contractor witnesses who were testifying at trial, which would have been relevant as to whether or not these— So the contractor witnesses were, in effect, testifying that they gave your client bribes. Correct, yes. One of whom was still working at NYCHA the day that he was testifying. That was why we had to start late on one of the days. It is our position that there was reasonable doubt in regards to the credibility of these contractors. One of the contractor witnesses admitted to lying on his asylum application. It's not clear whether or not the immigration court found any of his claims to be credible, because we weren't allowed to question that contractor witness further on his credibility on cross-examination. His credibility was placed into doubt initially by the prosecutor, right? There was negative information presented by the prosecutor. Yes. So what would you have added to that that you couldn't get in? We would have asked him further about whether or not—about the actual fact-finding hearing and whether or not the immigration court found him to be a credible witness on his asylum application. I understand. The judge— That was established. There wasn't a dispute. But the judge let you establish that he lied on his application, so why do you have to get into the findings of the immigration judge? If you re-establish he lied on the application— Well, there'd be a determination of his credibility. He admitted he lied. You don't need a determination of his credibility. He admitted he lied. That's a gold platter. The judge said he lied. There was also—we were not allowed to admit an anonymous complaint about whether or not he was bribing other NYCHA individuals. You admitted that anonymous complaint. You said to the district judge it was likely only tangentially related to his testimony and most likely not relevant to the proceedings. Those were your words, and you're saying that you should have a reversal of a conviction for something that you told the judge is tangentially related to his testimony? My argument is there's a matter of fairness here. That wasn't allowed, but anonymous Twitter posts alleging Joy Harris of committing the very crimes that she was on trial were allowed in. These are Twitter and news postings that state you, Joy Harris, and others are taking bribes. You have committed this crime, and that is something that would unreasonably influence the jury. It is a matter of fairness to not allow a complaint against a contractor witness that's in part because it's related to the issue of bribery at trial to allow what I would argue is more inflammatory evidence against the defendant is unfair and creates a negative impression on the jury that is not based on the testimony or other evidence that was provided at trial. I would, and so if anonymous accusations are too unreliable to impeach a government witness, they are equally unreliable to accuse the defendant. Effectively here, I'm arguing that the court applied two different evidentiary standards and that asymmetry created an unfairness that was visible to the jury. It is also our position that the government's framing of the case was unreasonable in the sense that she is a NYCHA employee who has one salary with one source of income and that when the contractors say, Joy Harris accepted bribe money from me, you, the jury, know that because she had no other source of income. That was the government's argument at trial. I read that the government never said she had no other source of income. It was talking about cash deposits. Its argument was about cash deposits, and she had all these cash deposits, and there was nothing to be gleaned from where she got all that cash from. It wasn't about other sources of income. It was about cash deposits. Well, the government says that the government's argument was that there was no reasonable explanation for where these cash deposits came from. All right. Why isn't that a reasonable argument that all these cash, it correlated with what were bribes according to their witnesses? Cash goes into a bank account. Why isn't there a fair argument for them to say, you know, there's no explanation for where this cash came from, from a salaried government employee? And if she had, obviously, documentation, she said it came from an insurance proceeds, that she took the check, cashed it at a cash checker, and they deposited the cash into her bank. That was her explanation when she testified, right? Yes, and she also had additional sources of income, including child support payments for taking care of her father as a home health aide. You had opportunities to pitch all of that to the jury. And all this before the jury. You can make your arguments, but it's nonsense. She got income from this source and her income from that source, and the notion that she had no other was unsupported in the record. It was nonsense. That was your job, wasn't it? It is our position that the bank statements that were provided by the government are contradictory to the framing by the government. Talk to them with that during a cross-examination and during your summons, and during your summation. I mean, that's the way trials work. They're trying to pull a fast one on you, on the jury. You had your opportunity to set the record straight, didn't you? Yes, Your Honor. Well, nevertheless, I would still argue then that at sentencing, the enhancement finding against the defendant was unreasonable. The court imposed an obstruction enhancement based on the conclusion that it was unbelievable to the judge that the defendant would cash money at a check-cashing place and then later deposit it to the bank. That finding is unreasonable and ignores. Didn't the judge make a separate finding when she denied receiving the bribes, that that was clearly perjury and false and obviously material? Wasn't that an independent basis for the enhancement? Why can't the judge do that? If the judge does that, then there's effectively punishing the witness for testifying in her defense. She has a Fourth Amendment right to testify. She has the right to lie, right? It depends what she says. She could have gone out there and said other things, but we've never said that the judge on the court issue of criminality, the judge can't impose the enhancement if the judge finds that she took the stand and lied about it. It happens all the time. Well, the defendant said that she had additional sources of income, and that evidence that he said was not believable is corroborated in the bank statements that were provided by the government. All right. Let me understand that argument. Nothing further. We'll hear from the government. Mr. Fang. Good morning, Your Honors, and may it please the Court. My name is Jerry Fang. I represent the government in this appeal, and I represented the government at trial. This Court should affirm the defendant's conviction and sentence because the trial record reflects that Judge Kaplan's admonitions to both parties during trial did not reflect any improper bias or deprive the defendant of a fair trial. The Court also didn't abuse its discretion in the evidentiary rulings that the defendant complains about. Moreover, the government's arguments regarding the cash deposits in summation did not mistake the evidence, and they were reasonable based on the record adduced at trial. And finally, Judge Kaplan properly imposed an obstruction enhancement based on his own findings, including credibility findings, that the defendant's testimony, both that she never took bribes and regarding her sources of income, constituted perjury. Your Honors, I'm happy to expand on any of these points that the Court wishes, but When you talk about, on this issue of evidentiary rulings, he focuses on the Twitter complaint and says that he wasn't going to question your witness regarding the anonymous complaint, and why was the Twitter complaint allowed? Can you address that? Yes, Your Honor. So there was no abuse of discretion there in those evidentiary rulings, and those were two completely different factual scenarios. With respect to Judge Kaplan's preclusion of cross-examination on this anonymous complaint, it was on Rule 403 balancing. It was basically an anonymous complaint submitted to the Department of Investigation alleging that one of the government's contracted witnesses was engaged in various fraud and bribery and money laundering, and Judge Kaplan had precluded that evidence on the basis that it was not probative as to the witness's truthfulness because they were unproven anonymous allegations. On the other side of the 403 ledger, Judge Kaplan found there to be a high risk of prejudice and that it was highly inflammatory, especially because the witness himself was going to admit as to his payment of bribes. And the district court's ruling permitting the government to cross the defendant on these Twitter postings that had alleged that she took bribes was reasonable. It was rational. It was not arbitrary. As background, the defendant had testified that she truthfully told law enforcement during a February 2022 interview that she was previously unaware of an investigation into bribery at NYCHA. That's at page 440 of the record. And so the government was entitled to impeach her credibility by showing that she was, in fact, previously aware of the bribery investigation because she had received various e-mails saying that there was an investigation. These were sort of mass e-mails sent to all NYCHA employees about news at NYCHA. And moreover, the defendant had testified that she had given relevant information to the investigation. She wanted to be helpful. That's at pages 435 to 436 of the appendix. And again, the government was entitled to impeach her credibility by establishing that she did not disclose her knowledge of these anonymous allegations. And so that goes to the defendant's credibility. The defendant had essentially opened the door to that line of cross. And another crucial factual distinction is the defendant actually received those e-mails. She knew about the Twitter postings. And so it all goes to her state of mind and whether she was being truthful when she was speaking to investigators. On the other hand, this contractor witness had never – there was no indication that he received that anonymous complaint. And so those are two completely different factual scenarios, and it wasn't arbitrary for Judge Kaplan to rule the way that he did. Unless the Court has any additional questions, the government rests on its leave. All right. Thank you. Thank you. Thank you both. It was a reserved decision. Have a good day.